MORROW *v.* MERRICK.

Opinion delivered March 26, 1923.

1. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—
   Where evidence is so conflicting that the preponderance can not
   be determined, the chancellor's findings will be adopted.

2. WATERS AND WATERCOURSES—DIVERSION OF SURFACE WATER.—A
   landowner may divert the flow of surface water in good faith for
   reclamation of his land if injury to adjoining land is not in-
   tended; and where his land could not be reclaimed by reasonable
   care and expense otherwise than by means of ditches and levees,
   he may construct them, provided that by so doing he does not
   necessarily obstruct the natural flow of surface water to an ad-
   joining property owner's injury.

3. WATERS AND WATERCOURSES—DIVERSION OF SURFACE WATER—IN-
   JUNCTION.—Where a person, by ditch, levee or other means, as-
   serts his right continuously to cast surface waters in a body
   upon the lands of another to the latter's irreparable and perma-
   nent injury, the party causing such injury is guilty of a private
   nuisance which the injured party may abate by injunction.

Appeal from Conway Chancery Court; *W. E. At-
kinson,* Chancellor; affirmed.

*J. Allen Eades,* for appellant.

Appellant had the right to improve his land by cut-
ting off surface waters from it, and he did nothing more.
*American Shovel & Tool Co.* v. *Anderson,* 90 Ark. 235;
*McCoy* v. *Plum Bayou Levee Dist.,* 95 Ark. 349; *Little
Rock & Fort Smith Ry. Co.* v. *Chapman,* 39 Ark. 476;
*Baker* v. *Allen,* 66 Ark. 276.

*Edward Gordon,* for appellees.

Proof shows appellant wrongfully changed the nat-
ural flow of the water and caused it to flow over lands of
appellees. *Taylor* v. *Rudy,* 99 Ark. 132; *Holtzman* v.
*Boiling Spring Bleaching Co.,* 14 N. J. Equity, 335;
*Clay* v. *Middleburg Electric Co.,* 11 L. R. A. (N. S.)
693. See *Wellborn* v. *Davies,* 40 Ark. 83.

WOOD, J. This action was brought by the appellees
against the appellant. The appellees alleged in their
complaint that they are the owners of certain lands which
they described; that these lands are situated at the foot

of Pigeon Roost Mountain and north of Point Remove Creek; that there is a branch or ravine into which the waters along the side of the said mountain drain and which flows on to and across the lands of defendant, adjoining plaintiffs'; that defendant is digging a ditch and building a levee at the foot of said hill on his land for the purpose of diverting and changing the natural flow of water and forcing the same to flow on to the lands of plaintiff, which will overflow about fifty acres of plaintiffs' land, to plaintiffs' irreparable injury and damage. The complaint concludes with a prayer for a mandatory injunction requiring the defendant to remove all levees and other obstructions and to fill up such ditches as he had dug to divert the natural flow of the water.

The appellant, in his answer, denied all the material allegations of the complaint, and alleged that he was digging the ditch complained of on his own land for the purpose of straightening the natural flow to where it has a natural outlet under the public road by a large culvert that was put there by the road construction people, and that said watercourse had been there for years, unknown to the defendant. He alleges that he is cutting away from plaintiffs' land a part of the overflow of water that would naturally come through there during high water, and is thus benefiting plaintiff's land, instead of injuring it.

The cause was heard upon the depositions of the witnesses taken at the instance of the respective parties and the exhibits to these depositions, and the court entered a general finding for the appellees, and entered a decree directing the appellant "to clean out the channel of the branch leading from the road culvert at the foot of the hill north of Point Remove Creek on the Hattieville & St. Vincent Road in Road District No. 4, from where same passes under said culvert, beginning at the east side, to where same empties into Point Remove Creek, and to completely fill up the ditch dug by him, within ten days from the rendition of the decree." The court

further decreed that the appellant be ''perpetually en-
joined from reopening said ditch or filling said branch,
or placing any obstruction in said branch which might
cause same to refill, or in any way change or divert the
natural flow of the water.''

It is the contention of the appellees that the appellant
has dug a ditch and built a levee on his own land which
has the effect of diverting and changing the natural flow
of surface waters through a branch or ravine which runs
across and through the lands of the appellant, emptying
into Point Remove Creek, and forcing them to flow in a
body on to the lands of the appellees, to their great and
irreparable injury.  On the other hand, the appellant,
while admitting that he has dug the ditch and built the
levee as alleged, nevertheless contends that the ravine
or branch, which the appellees claim he has obstructed,
was nothing more nor less than the left-hand prong of
a wet-weather branch which had only about a quarter of a
mile to gather water in, and that this prong really brings
water on to the land of the appellant from the appellees'
land, and that it meanders over appellant's rich bottom
land, about two acres, and that he dug the ditch and
built the levee for the purpose of reclaiming his own
land from the effect of the surface waters which were
gathered up and brought on to his land through this wet-
weather branch or ravine; that appellant's purpose was
only to control this surface water, and that the build-
ing of the ditch and levee only had the effect of turning
the water and causing it to flow in a natural channel that
went through the appellee's land and emptied into Point
Remove Creek; that the ditch and levee thus constructed
did not in any manner injure the appellees' land, but, on
the contrary, would have the effect of benefiting the
same.

The parties litigant introduced testimony to sustain
these respective contentions.  The testimony is exceed-
ingly voluminous, and it could serve no useful purpose to
set forth and discuss in detail the testimony of the wit-

nesses. After a careful reading of the record we have
reached the conclusion that this is one of those cases
where it is utterly impossible for this court to determine
where the preponderance lies. In *Leach* v. *Smith,* 130
Ark 465-470, we said: "When chancery causes reach this
court on appeal they are taken up for trial *de novo* on
the record made up in the lower court, that is, on the
same record, but the law and the facts are examined
the same as if there had been no decision at *nisi prius.*
In determining the issues of fact by this court in chan-
cery causes, no weight is given to the findings of fact
by the trial court, unless the evidence is so conflicting
as to leave the minds of this court in doubt as to where
the preponderance lies. Where the evidence is evenly
poised, or so nearly so that we are unable to determine
in whose favor the preponderance lies, then the findings
of fact by the chancellor are persuasive. But the issues
of fact, as well as law, are tried by this court anew."

We have carefully reviewed the evidence in this
record, and it is so conflicting, and, to our minds, so even-
ly poised that we are unable to say which of the litigants
is entitled to the preponderance. We are not convinced
that the findings of the trial court are clearly against the
weight of the evidence, and therefore must adopt the
findings of the chancellor as our own. To be sure, if
the appellant had done nothing more than merely divert
the flow of surface waters, and was doing so in good
faith for reclamation of his own land, and with no pur-
pose of injuring the adjoining lands of the appellees, and
if the appellant could not have reclaimed his own land,
by reasonable care and expense, otherwise than in dig-
ging the ditch and building the levee complained of, then
he would have had the right to do so, provided that, by
so doing, he did not unnecessarily obstruct the natural
flow of the surface water in such manner as to injure
the land of the appellees. *Little Rock & Fort Smith
Ry. Co.* v. *Chapman,* 39 Ark. 463; *Baker* v. *Allen,* 66 Ark.
271; *Ames Shovel & Tool Co.* v. *Anderson,* 90 Ark. 235;

*McCoy* v. *Board of Directors of Plum Bayou Levee Dist.,*
95 Ark. 345-349.

The converse of the doctrine above stated is equally
true. If the trial court found that the appellant was
dealing with the surface water, it must also have found
that he unnecessarily diverted its natural flow by dig-
ging the ditch and building the levee mentioned, and
that by so doing he did the appellees an irreparable in-
jury. We cannot say that such finding of the trial court
would be clearly against the preponderance of the evi-
dence, for there was testimony to justify the court in
finding that the appellant, instead of handling the sur-
face waters as he was attempting to do, could, at much
less expense, and with greater benefit to himself, and
without any injury to the appellees, have cleaned out the
channel of the branch which he had obstructed and al-
lowed the water to flow through the same and in its nat-
ural course and outlet into Point Remove Creek. Further-
more, the court was justified in finding from the evidence
that the appellant had gathered up the waters, which,
through various small drains or tributaries, made their
way into what counsel for appellant called the "left-hand
prong of this surface water branch," and by digging the
ditch and building the levee had cast these waters in a
body into the prong, depression, swale, or slough, that
ran into and upon the land of the appellees, where there
was no sufficient natural outlet for them, and thereby
had caused appellees' land to overflow, and which over-
flows, in times of high water, would result in practically
destroying several acres of valuable land.

The facts, as the court might have found them,
bring this phase of the case well within the doctrine of
*St. Louis, I. M. Ry Co.* v. *Magness,* 93 Ark. 46-53, where
we said: "Even if these waters had been nothing more
than surface waters, appellant could not gather them into
its ditch and cast them in a body upon the lands of ap-
pellees. This was practically the effect of appellant's
ditch. For the evidence shows that when the waters of

Thomas Creek were by this means added to the waters that usually passed through other lower natural and artificial drains, these drains were insufficient to carry them off, so they passed on over and overwhelmed appellees' lands.''

Where a person, by a ditch or levee, or other means, asserts his right to continuously cast the surface waters in a body upon the lands of another, to the irreparable and permanent injury of the latter, the party causing such injury is guilty of a private nuisance. The party injured may, if he so elects, resort to a court of chancery for a mandatory injunction to abate such nuisance and to have the offending party forever enjoined thereafter from causing and maintaining such nuisance. *Wellborn* v. *Davis,* 40 Ark. 83; *Taylor* v. *Rudy,* 99 Ark. 128; High on Injunctions, secs. 794 *et seq.;* Farnham on Water Courses, 582a.

We find no reversible error in the record, and the decree is therefore affirmed.