## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS,

AT THE

# October Term, 1859.

———————

## KITTREL EX PARTE.

Where an application for bail in a capital case is made to the Circuit Court, and the judge is prevented, by other business, or indisposition, from disposing of the application during the term, it is his duty, if desired by the prisoner to, fix upon as early a day in vacation, as may be convenient, for hearing the application.

Where an application for bail in a criminal case is pending in the Circuit Court, it would be irregular for another tribunal or officer, having concurrent jurisdiction, to issue a writ of habeas corpus to admit the prisoner to bail.

The provisions of the several statutes, authorizing the presiding judge of the County Court, etc., to admit to bail in criminal cases, were designed to apply exclusively to cases before indictment found, or to such cases, after indictment, as are exclusively made bailable by the constitution and laws of the land, and not to capital cases after indictment found—the Circuit Court, or Judge, having the exclusive jurisdiction, under the constitution and laws of this State, to hear applications for bail after indictment in a capital case, and determine from the evidence whether the accused is entitled to be admitted to bail.

The cases of *Good et al. Ex parte*, (19 *Ark.* 410), that the decision of the Circuit Judge, refusing bail, may be reviewed, and *Robins Ex parte*, (15 *Ark.* 402), that where the office of Circuit Judge is vacant, etc., this Court will issue the writ of habeas corpus to admit to bail in a capital case, cited with approbation.

*Application for Mandamus, etc.*

MAY and JORDAN, for the petitioner.

There had been no application for a writ of habeas corpus to the Circuit Court, nor had any such writ been issued by the Court. There was merely a motion for a preliminary examination, with a view of granting bail; and, on the adjournment of the Court, there was no longer an application for bail *pending* before the Court.

If the jurisdiction of the county and circuit judges is concurrent, the County Judge having acquired jurisdiction by the issuance of the writ, cannot be ousted of it by a writ of prohibition. The clause of the constitution (*Dig., p.* 43, *sec.* 5), giving the Circuit Court a superintending control over the County Courts; etc., was intended to apply to matters of an inferior grade, prima facie cognizable in those inferior courts, and not to matters of co-ordinate jurisdiction; and can be exercised only when the inferior court has acted in the premises, by way of reversing its proceedings by certiorari, etc.

The clause of the constitution (*Art.* 7, *sec.* 3) investing the Circuit Courts with exclusive original jurisdiction of all crimes amounting to felony at the common law, must mean the jurisdiction for final trial upon the merits, and not the preliminary examination of a party charged with a felony, for the purpose of committing to jail, granting bail, or discharging him.

*Sections* 2 *and* 7, *chap* 82, *Dig.,* clearly confer the jurisdiction upon the county judges to issue writs of habeas corpus, and admit to bail, and there is no provision in the constitution prohibiting the Legislature from conferring this power upon any tribunal. The same authority is recognized by *secs.* 26, 27, 28, *Dig., p.* 587, and the power is given to issue the writ as well after as before indictment. It is true *section* 26 but declares what the law already was, not only as to county but as to circuit judges, before the act was passed. The jurisdiction recognized and conferred by these sections is by negative words, but the meaning and intention of the Legislature may

be as strongly and positively expressed by negative as affirmative 'language. 10 *Pet.* 524; 9 *Ib.* 301; 3 *Cow.* 89; 15 *J. R.* 380; 21 *Wend.* 21; 9 *Cow.* 437.

In the case of *Robins Ex parte*, 15 *Ark.* 402, the question, whether the County Judge has jurisdiction to admit to bail in a capital case after indictment, was in no way referred to, or even mooted, much less adjudicated upon. As the question here presented was not before the Court in that case, or discussed in any of the decisions referred to in the opinion, the action of the Court in that case cannot be considered as an adjudication upon the point.

HOLLOWELL, Attorney General, *contra.*

It is submitted that the County Judge had no jurisdiction of the cause: that the issuing of the writ, in the first instance, was an extra-judicial act, and that he was unauthorized to hear or determine the writ. The circuit courts have exclusive original jurisdiction of all crimes amounting to felony at the common law. *Sec.* 3, *Art.* 7, *Con.* And the circuit judges have full power and authority, either in term time, or in vacation, to hear and determine a habeas corpus. *Wright vs. Johnson*, 5 *Ark.* 687.

It is submitted that a County Judge has no authority to issue a writ of habeas corpus, where the applicant is charged, by indictment, with a crime, which amounts to felony at common law. *Sec.* 3, *Art.* 6, *Con.* *Sec.* 7, *chap.* 82, *Dig.*, is relied upon by the counsel for the petitioner, which appears to authorize county court judges to issue writs of habeas corpus in every character of case. And, if that section of the statute was intended, by the Legislature, to give county judges concurrent jurisdiction with the circuit judges, in this character of cases, then it is submitted that the law is clearly unconstitutional.

An indictment raises no presumption of guilt on the trial; but, for the purpose of capture and detention, it necessarily is treated as raising a presumption of guilt. So, when the peti-

tioner presented his application for a writ of *habeas corpus* to the County Judge, accompanied, as it was, with a copy of the indictment, a *prima facie* showing was clearly made to him that he had no jurisdiction in the subject matter.

The matter of granting writs of *habeas corpus* is the exercise of original jurisdiction, lodged by the constitution and laws in cases of felony, after indictment, in the circuit judges, which this court will not interfere with, except where there is no subordinate court or judge competent to issue such writs, as held in the case of *Robins Ex parte*, 15 *Ark*. 402. And that case impliedly determines the question as to the jurisdiction of county judges in awarding writs of *habeas corpus*, and determining questions of bail, where parties are charged, by indictment, with felonies at common law.

Mr. Chief Justice English delivered the opinion of the Court.

The petitioner, *Joseph Kittrel*, states that on the 4th day of the September term, 1859, of the Circuit Court of Johnson county, the grand jury returned an indictment against him for murder—whereupon, being in custody, he made application to the Court for bail, the Court set the next day for the hearing of the application, and ordered the witnesses to be subpœnaed; which was accordingly done, and they were in attendance until late Saturday evening, the last day of the term.

That at the time the application for bail was made, and from thence until the afternoon of Saturday, the Court was engaged in the trial of a criminal cause; and the Judge, being indisposed during the term, was merely able to hold the Court in the day time. That after the criminal case referred to was disposed of, late Saturday evening, the Court positively refused to hear or determine any other business.

After the adjournment of the Circuit Court, and on a day of the following week, the petitioner applied to the Judge of the County Court of Johnson county, for a writ of *habeas corpus*, and to be admitted to bail. The County Judge granted the writ, and set a day for hearing the application for bail, etc. In

the meantime, on the petition of the State's Attorney, the Circuit Judge issued a prohibition to the County Judge, restraining him from proceeding further in the matter.

The petitioner prays this Court to quash the prohibition issued by the Circuit Judge; and for *mandamus* to the County Judge, commanding him to proceed to a hearing upon the *habeas corpus*, and to grant petitioner bail, if the testimony adduced shall warrant it, etc.

The Circuit Judge having been prevented, by other business of the Court, and by indisposition, from disposing of the application for bail, during the term at which it was made, and it being perfectly competent for him to hear and determine the application in vacation as well as in term time (*Good et al. Ex parte*, 19 *Ark.* 413), it was his duty, if desired by the prisoner, to have fixed upon a day in vacation for hearing the application, making the delay as short as his health and his official convenience would have permitted.

But it seems that while the application for bail was pending in the Circuit Court, and before it had been finally disposed of in any way, the petitioner thought proper to apply to the Judge of the County Court, to be brought before him on *habeas corpus*, and admitted to bail. This was irregular, even if it be conceded that the County Judge had concurrent jurisdiction with the Circuit Judge to grant the writ of *habeas corpus*, and admit the prisoner to bail, after indictment in a capital case, as insisted by his counsel.

But is it competent for a County Judge to exercise such jurisdiction?

Previous to the decision of this Court, in *White Ex parte*, 3 *Eng.* 222, it was a controverted question among the members of the legal profession of this State, whether, under our constitution and laws, a prisoner was entitled to bail at all after indictment for a capital offence. In that case, it was settled that the prisoner was not entitled to the writ of *habeas corpus* as a matter of right. That for the purpose of capture and custody, the indictment raised such presumption of his guilt as

to debar him from the privilege of the writ, and a right to bail, until he made an affirmative showing of such facts as would rebut the presumption raised against him by the indictment.

Since that decision, it has been the practice for the Circuit Judge to award the writ of *habeas corpus*, upon such showing, and determine the right to bail; and it has been recently settled by this Court, that the decision of the Circuit Judge in the matter of bail is subject to be reviewed, etc. *Good et al., Ex parte*, 19 *Ark*. 410.

It has, also, for a number of years, been the settled doctrine of this Court, that it could only issue the writ of *habeas corpus*, and other writs, in the exercise of its supervisory powers over the inferior tribunals, except in cases where the exertion of primary jurisdiction becomes absolutely necessary in order to prevent a failure of justice, by reason of some inherent defect in the subordinate tribunals, or incapacity in the incumbent, etc. See *Good et al., Ex parte*, and previous decisions there cited.

In the case of *Robins, Ex parte*, 15 *Ark. R.* 402, the slave of Robins being in custody on an indictment for murder, he applied to this Court for *habeas corpus*, and to admit the negro to bail, showing that the office of Circuit Judge was vacant, etc. And the Court, by Mr. Justice Scott, said: "The showing, etc., making it manifest, etc., that from the accidental cause stated, there *is no subordinate court competent* to give the relief sought, and that, without the interposition of this court, in the exercise of its constitutional powers of superintending control, there will be a failure of justice, we think, in the exercise of this high discretion, that the application should be granted in pursuance of the doctrines heretofore laid down."

Thus it was, in effect, decided that the County Judge had not competent authority to admit to bail after indictment for murder, but as this particular question does not appear to have been directly presented to the Court, we have looked into it as an open one.

The *habeas corpus* act, in very general terms, authorizes the

presiding judge of the County Court to issue the writ of *habeas corpus* in favor of any person committed to prison, etc., upon any criminal charge, and to admit such person to bail, if the offence be bailable, etc.   See *Gould's Dig.*, *ch.* 82. *Art. 1, secs.* 1, 2; *Art. III, sec.* 16.

So in equally general terms, *sec.* 59, *chap.* 52, provides that, " upon an indictment preferred, or to be preferred, in all criminal and penal prosecutions, recognizances for the appearance of the party, etc., may be entered into before the court in which the prosecution is had, or before *any judge of any court of record*, or justice of the peace.

So, in like general terms, *sec.* 14 *of chap.* 160, provides that, " every sheriff, when executing any writ of capias, in any criminal or penal case, which may, by law, be bailable, may take from the defendant a bond and security to the State, in any sum not less than one hundred, nor more than ten thousand dollars, conditioned, etc.

Is it to be understood from these provisions of the Digest, that the Legislature intended to confer upon *presiding judges of the County Court, justices of the peace*, and sheriffs, authority to admit to bail in capital cases after indictment found?

We think not.   It was said in the opinion of the Court in *White Ex parte*, 4 *Eng.* 225, that the *habeas corpus act* was designed to apply exclusively to cases before indictment found, or to such cases after indictment as are expressly made bailable by the constitution and laws of the land; and such, we think, is the proper construction of the other acts referred to, so far as they apply to judges of the County Court, justices of the peace and sheriffs.

The bill of rights declares, " That all prisoners shall be bailable by sufficient securities, unless in capital offences, where the proof is evident or the presumption great."

It has been settled by this Court, as above shown, that the finding of an indictment against a person for a capital offence, raises such presumption of his guilt, for the purpose of capture and detention for trial, as to preclude him from the right of

32

bail until the presumption thus raised against him is rebutted by an affirmative showing on his part. To hear the showing and determine upon the sufficiency, in cases of so much magnitude, is a matter of the greatest importance, both to the accused and to the State, and would seem to be the appropriate province of the court or judge entrusted, by the constitution, with the trial of such causes; and in the absence of any clear and explicit act attempting to confer upon inferior officers authority to hear and determine a matter of so much consequence in the progress of capital cases, we are disposed to doubt that such was the intention of the Legislature.

The constitution provides that *justices of the peace* may sit as examining courts, and commit, discharge, or recognize, to the court having jurisdiction, for further trial, offenders against the peace, etc. *Art.* 6, *sec.* 15.

The legislation which authorizes justices of the peace to issue warrants for the arrest of criminals generally, to sit as examing courts, discharge, commit, or admit to bail, before indictment, is consistent with the above provision of the constitution.

The constitution confers no jurisdiction upon county judges in criminal cases, nor does it authorize the Legislature to confer any; bnt on the contrary, distributes the jurisdiction of crimes to other tribunals.

The Circuit Court has exclusive original jurisdiction of all crimes amounting to felony at the common law, etc.

It is not competent, therefore, for the Legislature to confer upon county judges any jurisdiction or authority, in criminal cases, that may abridge or interfere with the constitutional jurisdiction of the Circuit Court in such cases.

The issuance of a warrant for the arrest of a criminal, the examination, the discharge *temporarily*, commitment, or admission to bail, before indictment, if they be anything more than mere ministerial acts, are preliminary to the prosecution in the Circuit Court, in no way interfere with its jurisdiction, and we think it was perfectly competent for the Legislature to confer

upon county judges, as they have done, authority to do such preliminary acts.

In all misdemeanors and felonies, not capital, the accused is entitled, as a matter of right, to bail, after, as well as before, indictment found: the taking of the bail bond is a mere ministerial act, in no way affecting the jurisdiction of the causes, and may, no doubt, be entrusted to any officer in whose discretion the Legislature may deem it expedient to confide.

Hence, we think, it was perfectly competent for the Legislature to empower the county judges to issue the writ of *habeas corpus*, bring before them, and admit to bail, persons imprisoned for such offences, before or after indictment. So, in such cases, the General Assembly had, no doubt, the power to authorize the sheriff to take the bail bond, when he arrests the accused, under a capias, after the indictment. (*Dig. ch.* 160, *sec.* 14). Though it is a safer practice, in all bailable cases, for the Circuit Judge to direct the clerk to endorse on the writ, the amount of bail required, as contemplated by *sec.* 119, *chap.* 52 *Dig.*

But in a capital case, after the accused is indicted, and the presumption of guilt, for the purpose of capture and custody attaches, the determination of the right to bail, is, as above remarked, a most important step in the progress of the cause. The evidence is to be heard, a profound knowledge of the law, on the part of the judge, is requisite, and a sound judicial discretion is to be exercised in order to determine whether the evidence adduced rebuts the presumption of guilt raised by the indictment, and proves the case to be bailable. If there is a probability that the accused is guilty of a capital offence, his detention for trial is of the utmost importance to the public, and a bail bond is a doubtful mode of securing his presence at the trial, and if forfeited the money recoverable upon it is not an atonement to the State for the outraging of the law. On the other hand, if the case is clearly bailable, it is of the greatest importance to the prisoner to have it so declared.

We are slow to believe that the Legislature intended to intrust the determination of so important a matter to a county

judge, and if it were manifest that such was the intention of the Legislature, we should be loth to uphold a law authorizing such an interference with the constitutional jurisdiction of the Circuit Court, by an inferior tribunal.

The prayer of the petitioner must be denied.