GRAVES *v.* FRENCH.

4-7797                                      191 S. W. 2d 590

Opinion delivered January 14, 1946.

*Claude E. Love* and *Sam Goodkin,* for appellant.

*L. B. Smead,* for appellee.

Holt, J. This litigation involves the care and custody of a child, Billy James Graves, now seven years of age. Appellants are the grandparents and appellee the mother. May 7, 1942, appellee obtained a decree of divorce from the child's father, R. L. Graves, Jr., and about 13 days later she married W. H. French. The decree awarded appellee custody of the child. The child's father, however, sought a modification of the divorce decree affecting the care and custody of the child, and on June 30, 1942, the court modified the decree and awarded the care and custody of Billy James Graves to his father, R. L. Graves, Jr. Appellee appealed from this decree of modi-

fication, but this court on March 8, 1943, affirmed the action of the lower court, (*French* v. *Graves,* 205 Ark. 409, 168 S. W. 2d 1108).

November 20, 1942, Bob Graves, the father, was inducted into the military service of the United States and was sent overseas. Thereafter, on June 1, 1944, the father, Bob, was killed in action and on February 8, 1945, appellee, Ola Graves French, the mother of the child, brought the present suit to obtain its care and custoday, and on July 2, 1945, the trial court awarded its care and custody to her with the provision that appellants, the child's grandparents, who have had the care and custody of Billy James practically all of the time since he was six months old, should have him in their home for at least a day and night each month, and with the further privilege to "visit said child at all reasonable times." This appeal followed.

On the threshold here, we are confronted with the former decree, *supra,* affecting the care and custody of this child. In that decree, its care and custody as noted above were awarded to the father, then living, who left the child in the care and custody of his father and mother, appellants here, where it had been with appellee's consent since it was about six months old. According to our long established rule, this latter decree awarding the care and custody of this child to its father should not be disturbed unless there have been such changed conditions, subsequent to that decree that would warrant the change, and then only for the best interest of the child. "A decree fixing the custody of a child is, however, final on the conditions then existing, and should not be changed afterwards unless on altered conditions since the decree, . . . and then only for the welfare of the child." *Phelps* v. *Phelps, ante,* p. 44, 189 S. W. 2d 617.

As we view the record, the only material change in conditions since the decree of this court in *French* v. *Graves, supra,* is the death of the child's father. Otherwise, the material facts and conditions are, in effect, the same on this appeal as in the former, except that here appellants have had the continued care and custody of

this little boy for almost three additional years since the former decree.

Reference is made to the former case for statement of the facts. We think it unnecessary to repeat them here.

Cases of this character are always difficult of solution. No hard and fast rule can be laid down and each case must be governed largely on its own particular facts, at all times bearing in mind that of prime importance and first consideration is the well-being of the child. There are certain general and well established rules, however, many times announced by this court, to guide us. One of our latest cases is that of *Tucker* v. *Tucker*, 207 Ark. 359, 180 S. W. 2d 571. There we said: ''We recognize the general rule that ordinarily the parent of the child is its natural guardian and is entitled to its care and custody; however, this is not always true. There are exceptions. Of prime concern and the controlling factor is the best interest of the child. The rule is laid down in *Johnston* v. *Lowery*, 181 Ark. 284, at page 287, 25 S. W. 2d 436 at p. 437, by this court in the following language: 'The law recognizes the preferential rights of parents to their children over relatives and strangers, and where not detrimental to the welfare of the children, they are paramount, and will be respected, unless special circumstances demand that such rights be ignored. *Herbert* v. *Herbert*, 176 Ark. 858, 4 S. W. 2d 513; *Loewe* v. *Shook*, 171 Ark. 475, 284 S. W. 726. The courts will not always, however, award the custody of an infant to the father, but, in the exercise of sound discretion, will look into the peculiar circumstances of the case, and act as the welfare of the child appears to require considering' primarily three things: (1) Respect for parental affection, (2) Interest of humanity generally, (3) The infant's own best interest.' ''

As we have indicated, except for the death of this child's father, the facts and circumstances that existed when the decree, *supra*, was rendered have, we think, remained unchanged. Was, therefore, the death of the father a sufficient change in conditions' to warrant the decree transferring the child's care and custody to the

mother, appellee? We do not think so. Appellants, the grandparents, still have their same home and have continued to care for this child by giving him educational and religious opportunities as before that decree. The same love and affection for the child with three additional years of cultivation, on the part of appellants, continues. While it is conceded that the appellee, mother, and the stepfather, French, are both of good character and able to care for the child, the nature of the stepfather's business, that of an engineer, requires frequent moves from place to place which obviously would disturb the child's schooling and environment. The trial court made the following findings in the decree: ''There is no doubt whatever in the court's mind that these grandparents are of the finest type of citizenship. This child could be in no better hands.''

This record discloses that the father of this child had lodged its custody with its grandparents, appellants, and the underlying factor in the former decree awarding the care and custody to the father was the fact that appellants in reality had its care and custody and that it was for the best interest of the child that it remain with its grandparents, appellants. Though the decree did not so recite, such was its effect.

The contest was then, and is, between the grandparents, appellants, and the mother, and we think, on this record the grandparents should prevail. In *Verser* v. *Ford, et al.,* 37 Ark. 27, this court said: ''This is a contest for the custody and nurture of an infant girl of tender age, whose mother died at her birth, and who, from the first two or three days of her existence, has been cared for and kept by the grandparents. The father now demands the child again, having since married, and being in circumstances to provide and care for it. . . . The father has shown himself to be a moral man, with the means of discharging his parental obligation. Certainly, under the circumstances, if he had been in possession of the child, no chancellor could have found warrant in equity for taking her away to be placed under the grandmother's care. But it cannot be ignored that the case does not present that attitude. The child was placed

where she is by the father's assent, and has so remained. By his assent ties have been woven between the grandmother and granddaughter, which he is under strong obligation to respect, and which he ought not wantonly and suddenly to tear asunder.''

So here, the mother was the first to part with this child's custody, and we think the principles of law announced in the above case apply with peculiar emphasis here.

Appellee has stood by far too long and permitted the ties of love, affection and attachment of these grandparents for this child to become too strong to be cast aside at this late date. Therefore, the decree will be reversed and the cause remanded with directions to the trial court to award the custody of the child to appellants, its grandparents, with the right of the mother to visit it at all proper times. It is so ordered.