BENSON *v.* BENSON.

5-3081                                372 S. W. 2d 263

Opinion delivered November 18, 1963.

*W. C. Medley,* for appellant.

*Brown, Compton & Prewett,* for appellee.

GEORGE ROSE SMITH, J. The appellee, Wallace H. Benson, was granted a divorce in the court below. This appeal questions only that part of the decree that awarded him the custody of the couple's three children, a boy and two girls, aged ten, eight, and six. It is contended that it would be to the children's best interest for them to be in their mother's care.

Wallace Benson and Attie Lou Strickland were married in 1951, both being in their teens. They had grown up in Calhoun county, but during the eleven years of their married life they lived in Camden, where Wallace worked for a paper company. In June of 1961 Wallace's older brother, Gervis Benson, came up from Texas to make his home with them, paying nothing for his room and board.

Each spouse blames the other for their separation late in May, 1962. Attie Lou stayed with a friend in Camden for a few days. On June 4 Attie Lou took the three children and accompanied her brother-in-law, Gervis, to Dallas, Texas. They say that they consulted an attorney, who advised Attie Lou to seek a divorce in Mexico. Attie Lou and Gervis immediately went to Mexico, where Attie Lou obtained a divorce the next day, June 5. The two were married in Mexico on June 6 and returned to Dallas, where they rented an apartment and lived together as man and wife. The appellee did not learn the whereabouts of his wife and children until about two months after they left Camden.

The controlling consideration is the best interest of the children; custody is not awarded or withheld with any thought of rewarding or punishing either parent. *Tidwell* v. *Tidwell*, 224 Ark. 819, 276 S. W. 2d 697. Here the chancellor, in announcing his decision, recognized the reluctance of the courts to take young children from their mother, but he considered this to be an exceptional case in which that action was called for. We cannot say that he was wrong.

The environment that the children would have in Dallas leaves much to be desired. Attie Lou is employed

at a cafeteria, where her working hours are from 9:00 a.m. until 1:00 p.m. and from 4:30 p.m. until 9:00 p.m. Hence for the greater part of the time that the children are not at school they would be in the care of a maid or baby sitter.

Gervis Benson is hardly the ideal person to act as a foster father to the children. Gervis's own father testified that Gervis had been addicted to drinking for ten years and was getting worse every year. Gervis's mother also appeared as a witness for the appellee and testified that Gervis had been dishonorably discharged by the Navy for peddling dope. (Gervis says that his discharge was the result of his having been court-martialed for intoxication.) The county sheriff testified that Gervis had been jailed twelve or fifteen times for drunkenness and fighting. It will be remembered that Gervis, after having enjoyed his brother Wallace's hospitality for a year, ran away with Wallace's wife and children and took up what was actually an adulterous relationship with the woman, since the Mexican divorce was unquestionably void. It is fairly open to doubt whether a relationship so originating is likely to be permanent.

By comparison the outlook for the children in Calhoun county is a bright one. There they will live with their father in the home of his parents, who are fairly young to be grandparents and in fact have a son of their own who is a year younger than the oldest of Wallace and Attie Lou's three children. Wallace is still employed at Camden, a few miles from his parents' residence, but he will be at home after working hours. We cannot say whether or not Wallace seriously mistreated his wife during their marriage; upon this issue the evidence is in hopeless conflict. It is reasonably certain, however, that even if he was at fault Wallace will be a better influence in the lives of his children than Gervis would be.

In a case of this kind the chancellor's opportunity to reach the right decision is immeasurably better than ours. He has the advantage of seeing everyone concerned at first-hand and is thus in a position to give all the testi-

mony its proper weight. This case presents a close question, upon which strong arguments can be made on both sides, but we cannot say with confidence that the chancellor was wrong in awarding the custody of the children to their father.

Affirmed.