Robert D. DIGBY *v.* Barbara Lynn DIGBY

77-155                                          567 S.W. 2d 290

Opinion delivered June 26, 1978
(In Banc)

814

*Dale Price,* of *Howell, Price, Howell & Barron,* for appellant.

*Joe Holmes* and *William Owen,* of *Holmes, Holmes & Trafford,* for appellee.

MAURICE CATHEY, Special Justice. This is an appeal from a Pulaski Chancery Court decree which refused to modify, at the request of the appellant, Robert D. Digby, an earlier decree awarding to his divorced wife, Barbara Lynn Digby, the custody of their two sons, Darrell, now ten years of age, and Tom Lawson, who is now seven. A cross appeal challenges the lower court's refusal to award attorney's fees to appellee in connection with appellant's unsuccessful efforts to modify the earlier decree.

Robert D. Digby and Barbara Lynn Digby were divorced in 1973, with the custody of the minor children being awarded to the mother, the appellee, pursuant to the stipulation of the parties and without any evidence on this issue being heard by the chancellor. Appellant was given visitation rights which included the right to have the minor children visit him on an overnight basis every other weekend. The decree directed that neither party should permanently remove the children from the jurisdiction of Pulaski Chancery Court without an appropriate order of that court.

On February 26, 1976, appellant, the father, filed a petition seeking custody of the children on the ground of a material change in circumstances since the entry of the original decree. Appellee denied that custody should be changed and subsequently filed a petition asking that she be allowed to remove the two children to Memphis, Tennessee, where, she alleged, she had "obtained an advancement in employment." The appellant replied, stating that the appellee had, in fact, already removed the children to Memphis without court approval, asked that she be held in contempt, and renewed his contention that a change of custody should be made so that he would have custody of the children.

On August 20, 1976, at a hearing held on the limited issue of whether the appellee should be allowed to remove the children to Memphis, appellee testified that she had obtained employment with a Memphis bank at a substantial pay increase over that received by her in her existing employment in North Little Rock. The court then ordered that the appellee be allowed to remove the children to Memphis where, apparently, they were already living.

Ten days later, on August 30, 1976, appellant filed a petition alleging that appellee had perjured herself at the earlier hearing with respect to her having obtained employment in Memphis and asked that she be required to return the children to Arkansas.

On September 3, 1976, the chancellor held a hearing on appellant's latest petition and found that appellee's

testimony, at the hearing of August 20, 1976, had been false and misleading. The chancellor directed that the children be returned to Arkansas pending a final hearing on the custody question. In connection with the hearing of September 3, 1976, the paternal grandparents, Tom F. and Jane H. Digby, intervened asserting their right to reasonable visitation as to their grandchildren.

At this stage of the litigation, the Pulaski County chancellor who had heard the earlier matters disqualified himself and Chancellor Lawrence E. Dawson of the Fourth Chancery Circuit was designated to decide the issues in dispute. Following a three day hearing, Chancellor Dawson made the following findings:

(a) The custody of the two minor children should remain in appellee;

(b) Appellee should be allowed to remove the children to Memphis, Tennessee;

(c) Specific times of visitation were granted to appellant and to the intervenors as paternal grandparents;

(d) Each party was ordered to pay his own attorneys' fees and court costs.

I.

While this court considers the evidence on a Chancery appeal de novo, it will not reverse the chancellor unless it is shown that the lower court decision is clearly contrary to a preponderance of the evidence. Particularly where the credibility of witnesses appearing before the chancellor is concerned, this court attaches substantial weight to the chancellor's findings on material issues of fact. *Minton v. McGowan*, 256 Ark. 726, 510 S.W. 2d 272 (1974); *Hampton v. Hampton*, 245 Ark. 579, 433 S.W. 2d 149 (1968).

The primary consideration in awarding the custody of children is the welfare and best interest of the children involved. Other considerations are secondary. *Moore v. Smith*, 255 Ark. 249, 499 S.W. 2d 634 (1973); *Benson v. Benson*, 237 Ark. 234, 372 S.W. 2d 263 (1963).

A chancery court decree with respect to the custody of a child is subject to modification in the light of circumstances which have changed since the rendition of the original decree. Also, if there were facts not known to the trial court in connection with the rendition of the original decree, these matters may be used as the basis for modification, if this would be in the best interest of the child. *Bond* v. *Rich*, 256 Ark. 51, 505 S.W. 2d 488 (1974); *Marr* v. *Marr*, 213 Ark. 117, 209 S.W. 2d 456 (1948).

Appellee admits that following her divorce from appellant, she participated in an affair with a North Little Rock married man pursuant to which she traveled with him to various locations throughout the United States and had sexual relationships with him on each of these trips. Also, it is admitted that the appellee and her married friend had sexual relations in the appellee's home. Appellee seeks to rationalize this relationship by asserting that none of these matters took place in the presence of the children and occurred after her divorce and at a time when her married friend was separated from his wife. While both the appellee and her married friend assert that the relationship began after the Digby divorce, the chancellor concluded that the relationship had begun prior to it. This conclusion is amply sustained by an entry made by appellee in her diary in which she refers to having had sexual relations with this married man while each of them was in the hospital at a time prior to the divorce.

The appellant testified that he did not know of the affair between the appellee and this married man at the time he consented to her having the custody of the two boys and that he would not have consented to the custody provisions of the original decree if he had known of this affair. Also, it is shown that nothing with regard to this affair was made known to the chancellor when the original custody decree was entered.

While the appellee and her two sons were residing in Memphis, appellee permitted a young man, whose last name she professed not to remember, to spend the night with her and the two boys in appellee's apartment. The sleeping arrangements are in dispute. The appellee testified that on this occasion, her two boys slept with her in her bedroom

while the young man slept in the bedroom of the younger Digby child. Darrell Digby testified that he and his brother occupied the same room, with the male visitor spending the night in the room of Lawson Digby, and the mother in another room.

There was also evidence to the effect that the appellee had dated another married man while he was separated from his wife and on one occasion, this man, his two children, the appellee and the Digby boys spent the night sleeping in a single tent, with another lady present on the trip sleeping in a ranch house on the property.

A North Little Rock neighbor of the appellee testified that she observed Darrell, while in appellee's custody, playing out late at night, sometimes as late as 10:30 or 11:00 p.m. Another neighbor observed Darrell playing as late as 9:00 or 10:00 in the evenings. There was evidence that the appellee left the boys with babysitters on a large number of occasions. Darrell, also, was reported as having visited at the home of a neighbor from the middle of the morning until after 5:00 o'clock p.m. with, apparently, no inquiry from or supervision on the part of the appellee.

There is ample evidence to support the conclusion that the appellee has not been truthful with respect to all of her testimony as given in this case. She obtained the permission of Pulaski Chancery Court to remove the boys from North Little Rock to Memphis upon her assertions that she had obtained a better paying job in a Memphis bank. Actually, the facts show, she not only had no such job, but had never applied for one.

Her testimony concerning the extent of the association between the Digby boys and the married man with whom she admittedly had sexual relations on numerous occasions varies substantially from that given by Darrell Digby.

Appellee offered no evidence as to any religious affiliations or church attendance on the part of the boys while they were in her custody following the divorce, although the family had apparently attended church with substantial regularity prior to the termination of the marriage.

Appellee's father testified but did not testify concerning anything about the relationship between the appellee and the boys nor as to the moral environment in the appellee's home.

Appellee's own testimony shows that she does not see anything morally wrong with her having had the sexual relationship with the married man so long as these matters took place outside the presence of the boys and after the divorce.

While the chancellor stated that the appellee may have repented for her previous actions, nothing in the record supports this conclusion.

The testimony of Darrell Digby was to the effect that, at the time of the hearing, he preferred to live with his mother because "she takes us a lot more places and we have a lot more fun with our mother."

While all of the evidence in the record is not favorable to the appellant and his present wife, the greater weight impels the conclusion that the Digby boys would be better off with their father and stepmother than with the appellee.

Willard Zeizer had served as minister of education at the Park Hill Baptist Church, North Little Rock, where he knew both appellant and appellee and the appellant's present wife. His opinion was that he felt very strongly that the welfare of the children would be best met by their residing with their father. He testified that appellant had a good reputation in the community for truthfulness and veracity while the appellee did not.

Fred Teasley testified that he had observed the Digby boys following the divorce while they were with the appellant and his present wife and that it was his opinion that the boys would be provided an outstanding home if they resided with Bob and Cindy Digby.

Pat Armbrust, a witness for appellant, testified to substantially the same effect, as did Dr. Cary Heard, the pastor of Park Hill Baptist Church in North Little Rock.

We recognize that not all of the evidence presented is favorable to the appellant.

It is shown that on one occasion, Darrell Digby found a bicycle in some nearby woods which his father permitted him to bring home and keep without reporting the matter to the police. There was some evidence to the effect that the appellant and his present wife may have lived together prior to their marriage and that appellant's present wife dated a married man prior to the marriage. There is, however, no evidence of any misconduct of either the appellant or his present wife since their marriage.

When the evidence is viewed in its entirety, it clearly preponderates to the effect that the Digby boys would have a more stable home relationship and a better sense of moral values if they were in the custody of the appellant and not the appellee.

The appellee is, of course, entitled to reasonable visitation with respect to her sons. We believe that it would not be in the best interest of the boys for this visitation to allow her to have them on alternate weekends as is now the case with regard to appellant. Both the appellant and his wife work and much of the social life of the family, as well as the activities of the boys, will take place on weekends. So long as appellee resides in the Memphis area or, if she should return to the North Little Rock area, we believe that she should have the right to have the boys visit her at her home one week end each month, beginning Friday evening and with the boys to be returned to their father by early Sunday evening. For a period of two weeks during the summer vacation, the appellee should be permitted to have the boys with her. Following Thanksgiving, the appellee should be permitted to have the boys for the remainder of the week in which this holiday falls.

So long as the appellee resides in Memphis or if she should return to the North Little Rock area, it will be the responsibility of the appellant to take the children to appellee's home at the beginning of the visitation and to pick them up at the end of this period. This may appear to be rather burdensome from the standpoint of the appellant, but

since the visits will generally be only once a month, the father should be willing to assume this responsibility.

Hopefully, the parties, with the aid of their counsel, can work out the details of these visitation rights without further resort to court. If they cannot, the trial court should determine any further details which are consistent with this opinion or necessary to its implementation.

## II.

The trial court denied to appellee any award of attorney's fee with respect to the extensive litigation which has taken place since the original divorce.

An attorney's fee should be awarded to appellee in connection with this litigation. The record shows that the appellee has very little income at the present time, working only as a substitute teacher in Memphis and doing some work as a model. While the exact income of appellant is not shown, he is shown to be a professional man and to have a substantial earning capacity. Even though the appellee has not prevailed in this litigation, she was, nevertheless, entitled to an opportunity to employ counsel to present her case to both the trial and appellate courts. Her own income appears inadequate for this purpose.

We therefore sustain the cross appeal and direct that an attorney's fee of $2,500.00 be awarded to appellee which will include the allowance for attorney's fees in this court on appeal. The costs of the appeal are taxed as against the appellant.

This cause is reversed both on the direct appeal and the cross appeal and remanded for proceedings consistent with this opinion.

HOLT and HICKMAN, JJ., not participating.

Special Justice MARVIN THAXTON joins in the opinion.

BYRD, J., dissents.