Deborah A. BONE *v.* James R. BONE, Jr.

CA 84-17                                      671 S.W.2d 217

Court of Appeals of Arkansas
En Banc
Opinion delivered July 5, 1984

164

*Gibson Law Firm,* by: *John F. Gibson, Jr.,* for appellant.

*Tarvin & Byrd,* by: *John R. Byrd,* for appellee.

LAWSON CLONINGER, Judge. The chancellor granted a petition for a change of custody of Amber, the five-year-old child of the parties, from appellant, Deborah A. Bone, to the appellee, James R. Bone, Jr. Appellee was granted custody of the child for nine months each year, and appellant was given custody for three months of each year beginning on June 5.

On this appeal, appellant urges six points for reversal,

and appellee urges two points on his cross appeal. Each point raised by the parties will be discussed, but not necessarily in the order presented. We find no merit in any of the contentions of the parties except for appellee's first point, in which appellee argues that the chancellor erred in failing to restrict appellant to visitation privileges under specific limited circumstances. The decision of the chancellor is reversed on that issue and the case is remanded.

Chancery cases are tried *de novo* on appeal, but findings of fact will not be disturbed unless they are clearly against the preponderance of the evidence. Arkansas Rules of Civil Procedure, Rule 52(a); *Warren* v. *Warren,* 270 Ark. 163, 603 S.W.2d 472 (1980).

Appellant's first point for reversal is that the court erred in finding that appellant and a male companion spent the night in a motel room with the appellant's minor child present. The transcript reveals that at the end of the trial, the chancellor took the case under advisement and, the next morning, he held that pursuant to the rule stated in *Digby* v. *Digby,* 263 Ark. 813, 567 S.W.2d 290 (1978), he was modifying the custody decree to the extent that the appellant, Mrs. Bone, would have custody for nine months and appellee would have custody for three months. Thereupon, appellee moved to reopen the case to call an additional witness, Mrs. Jessie Lee Coody, who had been in the hospital and was unable to testify. Initially, the chancellor denied the motion to reopen, but upon appellant's joining in the motion, he granted it. At the end of Mrs. Coody's testimony, the chancellor made note of the fact that one of appellant's suitors, Dr. Andrew David, had gone to a motel with the appellant and the minor child, according to Mrs. Coody's testimony. The chancellor stated that because of Mrs. Coody's testimony, he was again changing the custody and held that appellee would have custody for nine months and appellant for three months.

The chancellor did make the observation that Mrs. Coody's testimony was shaky and a bit overzealous. The rule is that an appellate court gives due regard to the chancellor's opportunity to judge the credibility and demeanor of the

witnesses. See *Baugh* v. *Johnson,* 6 Ark. App. 308, 641 S.W.2d 730 (1982). Since this is a question of fact, the chancellor was in a much better position to judge the credibility of Mrs. Coody as a witness, and we see no error on this issue.

Appellant's second point for reversal is that the court abused its discretion in refusing to grant appellant's motion for a continuance. Appellant based her motion on the premise that Dr. David and Carol Sawyer were needed to testify to contradict and discredit Mrs. Coody's testimony. Arkansas Rules of Civil Procedure, Rule 40(b) states, "The court may, upon motion and for good cause shown, continue any case previously set for trial." A trial judge does not abuse his discretion in denying a motion for a continuance based on the absence of witnesses where no proffer is made of what the witnesses would testify to. See *Bolden* v. *Carter,* 269 Ark. 391, 602 S.W.2d 640 (1980). Whether a motion for continuance should be granted is addressed to the discretion of the trial judge, and his decision will not be overturned unless that discretion is manifestly abused. *Johnson* v. *Coleman,* 4 Ark. App. 58, 627 S.W.2d 565 (1982). Here, no proffer was made by appellant's attorney as to what the witnesses would testify to, and we hold that the chancellor did not abuse his discretion in denying the motion.

Thirdly, appellant argues that the trial judge erred in refusing to determine the credibility of the testimony of Mrs. Jessie Lee Coody. We do not understand this point. In all cases the trial judge determines the credibility of the witnesses. In this case, the chancellor specifically found that although Mrs. Coody's testimony was overzealous at times and was shaky in certain respects, he did find that her testimony with regard to appellant and Dr. David was credible. Specifically, he noted that Mrs. Coody testified that she followed Dr. David and appellant to the Best Western Motel in Monticello, Arkansas. She stated that she observed them go into a motel room with the minor child. The chancellor found this testimony to be credible, and he based his modification of the custody decree on that particular incident. We cannot say that he abused his discretion.

Appellant argues next that the chancellor abused his discretion in refusing to allow John Frank Gibson the right to withdraw as appellant's attorney and to testify. From a review of the record, we do not find any motion made by appellant's counsel to withdraw from the case. He did request that the chancellor allow him to testify as a rebuttal witness in response to Mrs. Coody's testimony. Further, the chancellor's decision to change the custody from appellant to appellee was based on Mrs. Coody's testimony with regard to one particular incident: that appellant and Dr. David had taken the minor chlid to a motel. From a reading of the chancellor's decision, any other testimony of Mrs. Coody's was not a factor and, at most, cumulative. Mr. Gibson's testimony was to rebut Mrs. Coody's testimony on another matter. We find no error in the chancellor's decision to disallow appellant's counsel to testify.

Appellant's fifth point for reversal is that the court erred in refusing to grant appellant's motion for a new trial. Appellant based her motion on the fact that Carol Sawyer could not testify because she was not present on the last day the testimony was taken. An affidavit was attached to the motion in which she stated that she was not present because she was intimidated by appellee's present wife. A motion for new trial is addressed to the sound discretion of the trial judge and a refusal to grant such a motion should not be reversed unless the judge has clearly abused his discretion. *Black* v. *Johnson,* 252 Ark. 889, 481 S.W.2d 701 (1972). There is no indication that Carol Sawyer was ever subpoenaed, and because of this lack of diligence on the part of appellant to attempt to secure this witness at trial, she cannot now make this a legitimate basis for a motion for a new trial.

Lastly, appellant argues that the chancellor's findings were clearly against a preponderance of the evidence. The primary consideration in awarding custody of children is the welfare and best interest of the children involved. *Digby* v. *Digby, supra.* A chancellor's findings in custody matters will not be reversed unless they are clearly contrary to a preponderance of the evidence. *Digby* v. *Digby, supra.* The chancellor essentially based the modification of the custody decree on the ruling in *Digby.* In that case, the Arkansas

Supreme Court reversed a finding by the chancellor and held that the mother was unfit to have custody of her two sons. The Supreme Court reviewed the evidence and noted that the mother had participated in several affairs with married men and testified that she saw nothing morally wrong with having had sexual relationships with married men as long as the relationship took place outside of the presence of her children. The Supreme Court noted other factors in reversing the chancellor, including the fact that the mother had no religious affiliations or church attendance and testimony that she did not have a good reputation in the community for truthfulness.

In this case, appellant had sexual relationships with at least eight different men over an eighteen-month period. Three of the men were married and appellant did not know the last name of one of the men. She testified that she did not see anything morally wrong with her conduct. Appellant admits that a number of the men visited regularly in her home when the child was there, but insists that the child was not present during the acts of intercourse.

Two observations of the Arkansas Supreme Court in *Digby* seem particularly pertinent to the facts of this case:

> Appellee's own testimony shows that she does not see anything morally wrong with her having the sexual relationship with the married man so long as these matters took place outside the presence of the boys and after the divorce.

> While the chancellor stated that the appellee may have repented for her previous actions, nothing in the record supports this conclusion.

In *Digby*, as here, the mother recognized no moral wrong and gave no indication that she had any intention of changing her conduct.

The chancellor found that the father's home environment was more stable and conducive to better moral values for the child. It is noteworthy that the chancellor changed

the custody of the child after Mrs. Coody's testimony that appellant had gone to a motel with one of the men and was accompanied by the child. The chancellor also stated that he could not distinguish between *Digby* and the present case. Then, however, the chancellor permitted the child to be in the custody of the mother for three months of each year. The findings of the chancellor are clearly supported by the evidence, but we do not agree that the child should be in the unsupervised custody of appellant for a period of three months each year.

As in *Digby*, we find that when the evidence is reviewed in its entirety, it clearly preponderates to the effect that the child would have a more stable home relationship and a better sense of moral value if she were in the custody of appellee. We reverse the decision of the chancellor on the issue of custody with directions to enter an order granting custody to appellee, the father, with such visitation rights granted appellant, the mother, as the chancellor deems best for the interest of the child.

MAYFIELD, C.J., and COOPER, J., dissent.

MELVIN MAYFIELD, Chief Judge, dissenting. I would affirm the chancellor's decision because it is our duty to affirm his factual findings unless they are clearly against the preponderance of the evidence, ARCP Rule 52(a), and I cannot say he was clearly wrong in this case.

JAMES R. COOPER, Judge, dissenting. I dissent. First, as to the motel incident, it is a misstatement to characterize Ms. Coody's testimony as credible. She, after all, is the neighbor who characterized Ms. Bone's dates as "customers." As far as I am concerned, she was an unbelievable witness, and any finding of fact based on her testimony is clearly erroneous.

Although several other points are raised, I am primarily concerned with the change in custody. First, I think the majority opinion is wrong to restrict Ms. Bone to visitation rather than three months custody. Implicit in the chancellor's finding that Ms. Bone should have custody is the

finding that she was fit to have custody. If she is fit to have custody for three months, as the chancellor obviously found, how then can the decision to take primary custody from her be justified?

There is no evidence in this record which indicates that the child has been harmed by the appellant's conduct. Further, there is no evidence that, through the mother's care, the child is not well-adjusted and cared for properly in every respect. It appears to me that the trial court erroneously relied on *Digby* v. *Digby*, 263 Ark. 813, 567 S.W.2d 290 (1978). Although at first glance *Digby* seems to control, it is quite different factually. In that case, the mother was engaging in affairs before, during, and after the divorce, making extended out-of-state trips with other men while she was married. Further, she allowed a man (whose name she could not remember) to spend the night with her while her children were present. Further, in *Digby*, there was evidence that Ms. Digby left one of her sons unsupervised for extended periods of time. Ms. Digby was also not a particularly credible witness. Her testimony about her sexual relationships was markedly different from the testimony of her oldest son. Also, she apparently perjured herself concerning a desired move to Memphis.

The appellant does not deserve to be punished for her lifestyle where it is not demonstrated that her child has, or will suffer because of it. I would reverse the chancellor's decision to change custody, thus leaving custody in Ms. Bone. However, I would modify the order to provide that Ms. Bone refrain from allowing men to spend the night with her when the child is present.